**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------X

LIFE'S FORTUNE LLC successor to,                Case No. 7:24-cv-05066-CS
NEKTAR NUTRITION INC, OWELL
NATURALS BRAND, LCC and MOSHE ZAHLER
a.k.a. MOSES ZAHLER,

                                *Plaintiff*,


       -  against –


SERENU INC., JOSEPH STERN,
SHAYA WERZBERGER a.k.a. VOLVIE
WERZBERGER, and SHMUEL MAYER
ROTH,

                                *Defendant*.
--------------------------------------------------------------------X

### DEFENDANT SHMUEL MAYER ROTH'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS


STEIN ADLER DABAH AND ZELKOWITZ LLP
936 Broadway, 5th Fl.
New York, NY 10010
Tel: 212.867.5620

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

**PRELIMINARY STATEMENT** ..................................................................................1

**FACTUAL BACKGROUND** ....................................................................................2

I.   **The Parties** ...............................................................................................2

II.  **ON's Alleged Trade Dress** ......................................................................3

III. **Trade Secret Allegations** ........................................................................4

**ARGUMENT** .......................................................................................................... 5

I.   **Rule 12(b)(6) Legal Standard** ................................................................. 5

II.  **Counts I, II, and X: The Trade Dress Claims** ...................................... 5

    A.  *Plaintiffs Do Not Identify Anything Distinctive About Their Products* ........................ 6

    B.  *Plaintiffs Fail to Adequately Plead Secondary Meaning* ....................................... 8

    C.  *The Alleged Design is Functional* ..................................................... 11

    D.  *The Complaint Does Not Adequately Allege Likelihood of Confusion* ...................... 12

    E.  *The NY- Gen. Bus. L 360-L Claim (Count X) Also Fails* ............................... 13

III. **Counts III, IV, VI: The Trade Secret Claims** ................................................... 14

    A.  *No Trade Secrets Are Alleged With Requisite Specificity* ............................. 14

    B.  *Lists with Contact Information Are Not, As Pleaded, Trade Secrets* ......................... 16

    C.  *To the Extent No Misappropriation Is Alleged, There Can Be No Claim* ..................... 17

    D.  *The AC Does Not Sufficiently Allege the Value of the Alleged Trade Secrets* ............ 18

    E.  *The AC Inadequately Pleads Plaintiffs' Protection of its Property* ........................... 18

    F.  *The Unjust Enrichment Claim (Count VI) Is Duplicative of Counts III and IV* ........... 19

    G.  *The Complaint States No Basis for Roth's or Stern's Individual Liability* ................ 20

i

# TABLE OF CONTENTS
### (*cont'd*)

IV.   **Count IX: Unfair Competition** ....................................................................... 20

V.    **The Breach of Contract Claim (Count XIII) Fails to State A Claim** ......................... 22

**CONCLUSION** ........................................................................................................23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*24 Seven, LLC v. Martinez*
  2021 U.S. Dist. LEXIS 15480 (S.D.N.Y. Jan. 26, 2021) ........................................................ 17, 18

*Altman Stage Light., Inc. v. Smith*
  2022 U.S. Dist. LEXIS 22699 (S.D.N.Y. Feb. 8, 2022) .................................................... 14

*APP Grp.(Can) Inc. v. Rudsak USA Inc.*
  2024 U.S. App. LEXIS 554 (2d Cir. Jan. 9, 2024) ............................................... 6, 7 n.3, 11

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ............................................................................................................. 5

*Atari Interactive, Inc. v. Printify, Inc.*
  714 F.Supp.3d 225 (S.D.N.Y. 2024) ............................................................................. 20

*Beijing Neu Cloud Oriental Sys. Tech. Co. v. IBM*
  2022 U.S. Dist. LEXIS 54348 (S.D.N.Y. Mar. 25, 2022) ................................................ 16

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) .......................................................................................................... 5

*Berman v. Sugo LLC*
  580 F.Supp.2d 191 (S.D.N.Y. 2008) ......................................................................... 23

*Broidy v. Global Risk Advisors LLC*
  2023 U.S. Dist. LEXIS 171621 (S.D.N.Y. Sept. 26, 2023) ........................................ 15

*Bubble Genius LLC v. Smith*
  239 F.Supp.3d 586 (E.D.N.Y. 2017) ....................................................................... 9, 10

*Bytemark, Inc. v. Xerox Corp.*
  342 F.Supp.3d 496 (S.D.N.Y. 2018) ...................................................................... 20, 21

*Caliko, SA v. Finn & Emma, LLC*
  2022 U.S. Dist. LEXIS 34658 (S.D.N.Y. Feb. 28, 2022) .......................................... 5 n.2

*Capri Sun GmbH v. Am. Bev. Corp.*
  595 F.Supp.3d 83 (S.D.N.Y. 2022) ........................................................................ 13

*Carson Opt., Inc. v. Prym Consumer USA, Inc.*
  11 F.Supp.3d 317 (E.D.N.Y. 2014) .............................................. 6, 8, 9 n.4, 11, 13

*Catalyst Advisors, L.P. v. Catalyst Advisors Invs. Glob. Inc.*
  602 F.Supp.3d 663 (S.D.N.Y. 2022) .................................................................... 17

*Converged Compliance Solutions, Inc. v. Xop Networks, Inc.*
  2024 U.S. Dist. LEXIS 173883 (S.D.N.Y. Sept. 25, 2024) .................................. 16-17, 17

## TABLE OF AUTHORITIES
### (*cont'd*)

*Coty Inc. v. Cosmopolitan Cosms. Inc.*
432 F.Supp.3d 345 (S.D.N.Y. 2020) ............................................................ 20

*Deckers Outdoor Corp. v. It's Friday, Inc.*
2024 U.S. Dist. LEXIS 198494 (S.D.N.Y. Oct. 31, 2024) .......................... 11

*Democratic Nat'l Comm. V. Russian Fed'n*
392 F.Supp. 3d 410 (S.D.N.Y. 2019) ................................................... 15, 16

*Dentsply Int'l Inc. v. Dental Brands for Less, LLC*
2016 U.S. Dist. LEXIS 149139 (S.D.N.Y. Oct. 27, 2016) ..................... 21-22

*DO Denim, LLC v. Fried Denim, Inc.*
634 F.Supp.2d 403 (S.D.N.Y. 2009) ............................................................ 12

*eCommission Sols, Inc. v. CTS Holdings Inc.*
860 F.Appx. 758 (2d Cir. 2019) .................................................................. 21

*Ebomwonyi v. Sea Shipping Line*
473 F. Supp. 3d 338 (S.D.N.Y. 2020) ......................................................... 23

*Eliya, Inc. v. Steven Madden, Ltd.*
749 F.Appx. 43 (2d Cir. 2018) .................................................... 7 n.3, 11, 12

*Elsevier Inc. v. Doctor Evidence, LLC*
2018 U.S. Dist. LEXIS 10730 (S.D.N.Y. Jan. 23, 2018) ...................... 14, 15

*Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*
194 F.Supp.3d 263 (S.D.N.Y. 2016) ........................................................... 21

*Fernandez v. Zoni Language Ctr., Inc.*
2016 U.S. Dist. LEXIS 65310 (S.D.N.Y May 18, 2016) .......................... 10 n.5

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
669 F.Supp.2d 405 (S.D.N.Y. 2009) ........................................................... 22

*Garvey v. Face of Beauty, LLC*,
2022 U.S. Dist. LEXIS 171182 (S.D.N.Y. Sept. 21, 2022) ...................... 17 n.6

*Hello I Am Elliot, Inc. v. Sine*
2020 U.S. Dist. LEXIS 116681 (S.D.N.Y. July 2, 2020) ............................. 9

*Hesse v. Godiva Chocolatier, Inc.*
463 F.Supp.3d 453 (S.D.N.Y. 2020) ........................................................ 10 n.5

*Int'l. Leisure Prods. v. Funboy LLC*
747 F.Appx. 23 (2d Cir. 2018) ...................................................................... 7

**TABLE OF AUTHORITIES**
*(cont'd)*

*Inv. Science, LLC v. Oath Holdings Inc.*
2021 U.S. Dist. LEXIS 151076 (S.D.N.Y. Aug. 11, 2021) ................................................... 14, 18, 19

*Is. Intellectual Prop., LLC v. Stonecastle Asset Mgt. LLC*
463 F.Supp.3d 490 (S.D.N.Y. 2020) ............................................................................... 15

*Krasnyi Oktyabr, Inc. v. Trilini Imports*
578 F.Supp.2d 455 (E.D.N.Y. 2008) .............................................................................. 14

*Landscape Forms, Inc. v. Columbia Cascade Co.*
113 F.3d 373 (2d Cir. 1997) ..................................................................................... 6, 8

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*
209 F.Supp.3d 612 (S.D.N.Y. 2016) ......................................................................... 9 n.4

*Mason v. Amtrust Fin. Servs., Inc.*
848 F. Appx. 447 (2d Cir. 2021) ................................................................................. 19

*Nat'l Lighting v. Bridge Metal Indus., LLC*
601 F.Supp.2d 556 (S.D.N.Y. 2009) ............................................................................. 6

*Nora Beverages, Inc. v. Perrier Group of America, Inc.*
269 F.3d 114 (2d Cir. 2001) ....................................................................................... 5

*Quality Serv. Grp. v. LJMR Corp.*
831 F.Supp.2d 705 (S.D.N.Y. 2011) ............................................................................. 9

*Regency NYC, Inc. v. Atkinson*
2024 U.S. Dist. LEXIS 180601 (S.D.N.Y. Sept. 27, 2024) ............................................... 17

*Rocket Pharms., Inc. v. Lexeo Therapeutics, Inc.*
2024 U.S. Dist. LEXIS 145771 (S.D.N.Y Aug. 14, 2024) ................................................ 21

*Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of NJ*
894 F.Supp.2d 288 (S.D.N.Y. 2012) ............................................................................ 10

*RVC Floor Decor, Ltd. v. Floor & Decor Outlets of Am., Inc.*
2024 U.S. Dist. LEXIS 100187 (E.D.N.Y. Jun. 5, 2024) .................................................. 13

*SA Luxury Expeditions, LLC v. Schleien*
2022 U.S. Dist. LEXIS 155127 (S.D.N.Y. Aug. 29, 2022) ............................................... 21

*Sara Designs, Inc. v. A Classic Time Watch Co.*
234 F. Supp. 3d 548 (S.D.N.Y. 2017) ........................................................................ 6, 8

*Shake Shack Enters., LLC v. Brand Design Co.*
708 F.Supp.3d 515 (S.D.N.Y. 2023) ........................................................................ 22-23

*Silverman v. 3d Total Solutions, Inc.*
2019 U.S. Dist. LEXIS 153048 (S.D.N.Y. Sept. 9, 2019) ................................................ 23

v

## TABLE OF AUTHORITIES
### (cont'd)

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*
    588 F.3d 97 (2d Cir. 2009) ............................................................................ 13

*Tilebar v. Tiles*
    723 F.Supp.3d 164 (E.D.N.Y. 2024) ...................................................... 19, 20, 21

*Uni-World Capital L.P. v. Preferred Fragrance, Inc.*
    43 F.Supp.3d 236 (S.D.N.Y. 2014) ................................................................ 21

*Universal Processing LLC v. Zhuang*
    2018 U.S. Dist. LEXIS 168730 (S.D.N.Y. Sept. 28, 2018) ...................... 18, 19

*Urban Group Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*
    2013 U.S. Dist. LEXIS 33270 (S.D.N.Y. March 8, 2013) ........................ 10-11

*Vedder Software Group Ltd. v. Ins. Servs. Office*
    545 Fed. Appx. 30 (2d Cir. 2013) .................................................................... 6

*Vedder Software Grp. Ltd. v. Ins. Servs. Offices*
    2013 U.S. Dist. LEXIS 202852 (N.D.N.Y. Mar. 22, 2013) ............................ 12

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*
    127 F. Supp.3d 156 (S.D.N.Y. 2015) ....................................................... 10 n.5

*Yurman Designs, Inc. v. PAJ, Inc.*
    262 F.3d 101 (2d Cir. 2001) ...................................................................... 5, 8

*Zurich Am. Life. Ins. Co. v. Nagel*
    538 F.Supp.3d (S.D.N.Y. 2021) ..................................................................... 15

**Statutes**

N.Y. Gen. Bus. L. §360-L ......................................................................... 5, 13

15 U.S.C. §1125 ............................................................................................. 5

Fed. R. Civ. P. 12(b)(6) ...................................................................... 1, 2, 3, 4, 5

Defendant Shmuel Mayer Roth ("Roth") submits this memorandum of law in support of his motion to dismiss the First Amended Complaint ("AC") of plaintiffs Life's Fortune LLC ("LF"), Nektar Nutrition Inc. ("Nektar"), Owell Naturals Brand, LLC ("ON") and Moshe Zahler (collectively, "Plaintiffs") under Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiffs have tried and failed again.  Walking back some of the more outlandish and facially baseless allegations set forth in their Original Complaint, Plaintiffs' Amended Complaint abandons their prior fraud and RICO claims asserted against Plaintiffs' former employees, but doubles down on a slew of ill-pleaded causes of action meant to strangle Defendants' business.

The Amended Complaint's attempt to invent trade dress and trade secrets out of thin air fails as a matter of law.  Indeed, Plaintiffs remain unable to describe any distinct trade dress of their own, suggesting that any jars with white lids are somehow distinctively associated with their "Owells Natural" brand.  The trade dress allegations thus fail for want of a trade dress design but also because Plaintiffs are unable to plead secondary meaning. Specifically, Plaintiffs' own website and Amazon pages tout a brand new design that undermines any suggestion of long-standing consumer association of their alleged design with their brand.

The trade secret allegations fare no better, since Plaintiffs can muster only the most general and conclusory descriptions of categories of potentially confidential information.  No trade secrets are actually alleged, because their unique value is never described. Indeed, behind recitation of legal elements and general descriptions of "formulas" and "lists," the factual allegations describe mere *attempts* to misappropriate information or buy company secrets.

As to the contract claim asserted against Roth, Plaintiffs allege no more than that Roth signed an agreement with terms similar to a contract signed by one of his co-defendants, but no

details about the contract's formation—not even who Roth's alleged counterparty is—are provided.

The remaining claims asserted against Roth and his co-defendants are addressed in the brief of Defendant Joseph Stern and Defendant Serenu, Inc. filed concurrently herewith. Roth hereby adopts and incorporates the arguments and authorities set forth in that motion as if asserted herein.[1]

## FACTUAL BACKGROUND

### I.    The Parties

The AC alleges that LF, which is owned by Moshe Zahler ("Zahler"), operates brands in the health and beauty space, which it sells across the country via online platforms like Amazon and in physical stores. AC, ¶6. ON is a manufacturer of vitamins, supplements and cosmetics sold via similar channels. *Id.* at ¶7.

Plaintiffs allege that they hired Roth to serve as CFO in 2020 and subsequently raised his salary and gave him bonuses. *Id.*, ¶¶27, 29. The AC claims that Roth "signed a written employment contract with Plaintiffs on the same terms" that Defendant Joseph Stern ("Stern") did, but those terms are not described, nor is any other information about this purported "contract." *Id.*, ¶28. Plaintiffs allege that Roth was exposed to "trade secrets, business know-how and other confidential and proprietary information," which they do not identify or describe in any detail. *Id.*, ¶30. Roth was allegedly responsible for the purchase, sale and marketing of Plaintiffs' products, and

---

[1] Defendant Roth submits this memorandum of law in support of his motion to dismiss the claims asserted in the AC sounding in trade dress infringement (Counts I, II, X) and trade secret misappropriation (Counts III, IV, and VI), as well as the claim for unfair competition (Count IX) and the claim asserted against him for breach of contract (Count XIII). Roth respectfully adopts and incorporates by reference the arguments and legal authorities set forth in the memorandum of law filed in support of Defendant Stern's and Defendant Serenu Inc.'s motion to dismiss, filed concurrently herewith, to the extent that such arguments apply to the claims against Roth in this action, including but not limited to Counts V, VII, VIII, XI, XV-XVIII.

negotiated with manufacturers and vendors. *Id.*, ¶32. Roth resigned from his job in December 2023. *Id.*, ¶33.

Roth is accused of stealing a work computer from Plaintiffs' offices and downloading proprietary data from it. *Id.*, ¶106. He allegedly purchased products and services for Serenu from "Plaintiffs' vendors" while he was employed by Plaintiffs. *Id.*, ¶107. Roth is also accused of purposefully entering unauthorized keywords into Plaintiffs' Amazon platform which caused Amazon to shut down Plaintiffs' product listings. *Id.*, ¶112. This was purportedly done by Roth so as to minimize competition for Serenu. *Id.*, ¶115. Roth also allegedly pays "current employees of Zahler" for trade secrets and confidential information, though no such secrets or information is identified. *Id.*, ¶119. He further is alleged to have sent a list of Plaintiffs' customers with their contact information to Werzberger's personal email account. *Id.*, ¶124.

Roth and Stern are alleged to operate Defendant Serenu, Inc. ("Serenu") with Defendant Shaya Werzberger. *Id.*, ¶52. Serenu is alleged to sell products under the Pure Ease brand name that compete with Plaintiffs' products using ON's alleged trade dress. *Id.*, ¶¶53-56.

## II.    ON's Alleged Trade Dress

Having failed to identify any trade dress utilized by any of the Plaintiffs in their July 3rd, 2024, Original Complaint (Docket No. 1, the "Original Complaint"), the AC now goes to great lengths to invent a "trade dress" for some product marketed by Plaintiffs. ON now alleges that it owns "distinctive and protected trade dress" comprised of "an identically shaped and sized container and lid," with the lid being "white" and the container being a different color than the lid. *Id.*, ¶42. ON's alleged trade dress also includes "a large bolded statement of a characteristic of the product [prominently placed] at the top of the container [with] a generic name for the product in the middle of the container in a different color than the container and in a larger font than anything else." AC, ¶42.  The alleged trade dress also includes the list of the product's intended uses at the

container's bottom. *Id.* This "trade dress" is alleged to be recognized by customers as signifying ON as the source of "the products" because it has been used since 2022, has generated positive reviews on Amazon, and cost ON $1.8 million in advertising. *Id.* ¶¶46-48.

Serenu's Pure Ease products are alleged to mimic these design elements by adopting the shapes and sizes of the containers, using a white lid non-white colors on the container, using large and bolded fonts on the lid, prominent placement of the brand at the top of the container, the generic name of the product in the middle of the container in a different color than the container itself, and listing the product's uses on the bottom. *Id.*, ¶¶57-58. Moreover, Serenu is alleged to have "achieved the overwhelming similarity between" the products by using ON's labels and photographs, and by hiring the same graphic designers that ON uses. *Id.*, ¶59. Serenu allegedly markets these products in bad faith to purchasers of ON products via the same "trade channels," which is allegedly likely to cause confusion as to their origin. *Id.*, ¶¶61-62, 65-66, 69, 75.

### III.    Trade Secret Allegations

The AC contends that Plaintiffs own "a variety of trade secrets" that include its product formulas, customer lists, vendor, supplier and provider lists, as well as their business, marketing and pricing strategies. *Id.*, ¶76. Plaintiffs allege they developed these trade secrets over many years through "painstaking time and effort at significant expense." *Id.*, ¶77. Plaintiffs claim they took steps to protect these trade secrets by asking employees to sign non-disclosure agreements, implementing cybersecurity protections and using passwords and/or physical locks on company property. *Id.*, ¶79. Stern and Roth are accused of disclosing these trade secrets to Serenu, which used them to launch its business of selling identical products to Plaintiffs' customers using Plaintiffs' product formulas and vendors. *Id.*, ¶84.

## ARGUMENT

### I.     Rule 12(b)(6) Legal Standard

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be dismissed if it does not offer factual allegations sufficient to render the claims facially plausible. *Id.* While accepting well-pleaded allegations as true, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As such, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### II.     Counts I, II and X:  The Trade Dress Claims

In Counts I and II, Plaintiffs allege that Defendants' use of ON's trade dress is violative of New York law and 15 U.S.C. §1125(a)(1)(A),[2] which prohibits "any false designation of origin, false or misleading description [or representation] of fact… likely to cause confusion" in the marketplace as to goods' proper affiliation. In Count X, Plaintiffs restate their trade dress infringement allegations as a claim for violation of N.Y. Gen. Bus. L. §360-L.

Trade dress "encompasses the overall design and appearance that make the product identifiable to consumers." *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 269F.3d114, 119 (2d Cir. 2001). Courts "exercise particular caution when extending protection to product designs" (*Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 114 (2d Cir. 2001)) because protecting

---

[2] The first two Counts rise and fall together. *See Caliko, SA v. Finn & Emma, LLC*, 2022 U.S. Dist. LEXIS 34658, at *22 (S.D.N.Y. Feb. 28, 2022) ("In all significant aspects, trade dress protection is coextensive under New York state law and federal law.").

"ordinary product design would create a monopoly in the goods themselves," stifling market competition. *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 380 (2d Cir. 1997).

"To plead a claim of trade dress infringement involving the overall appearance of a product, a plaintiff must offer (1) a precise expression of the character and scope of the claimed trade dress," and "must also allege that (2) the claimed trade dress is non-functional; (3) the claimed trade dress has secondary meaning; and (4) there is a likelihood of confusion between the plaintiff's goods and the defendant's." *APP Grp. (Can.) Inc. v. Rudsak USA Inc.*, 2024 U.S. App. LEXIS 554, *2 (2d Cir. Jan. 9, 2024). These elements must be pled in non-conclusory fashion; formulaic recitation of legal elements is insufficient. *Vedder Software Group Ltd. v. Ins. Servs. Off.*, 545 F.Appx.30, 33 (2d Cir. 2013).

A. *Plaintiffs Do Not Identify Anything Distinctive About Their Products*

Because only distinctive trade dress is protected, Plaintiffs must do more than articulate designs; they must also plead that they are "distinctive and how they are distinctive." *Sara Designs, Inc. v. A Classic Time Watch Co.*, 234 F.Supp.3d 548, 555 (S.D.N.Y. 2017). Simply providing, as Plaintiffs do here, a "laundry list of the elements that constitute a . . . design" is plainly insufficient. *Nat'l Lighting v. Bridge Metal Indus., LLC*, 601 F.Supp.2d 556, 562 (S.D.N.Y. 2009); *see also Landscape Forms*, 113 F.3d at 381 ("[F]ocus on the overall look of a product does not permit a plaintiff to dispense with an articulation of the specific elements which comprise its *distinct* dress") (emphasis in original). A plaintiff's list of design elements—including color scheme, general layout and spatial relationship of labels—must be accompanied by an explanation as to "how the asserted trade dress elements [] are distinctive." *Carson Opt., Inc. v. Prym Consumer USA, Inc.*, 11 F.Supp.3d 317, 347 (E.D.N.Y. 2014) (dismissing "laundry list" description).

Here, Plaintiffs try to invent a "Trade Dress" by identifying a number of generic features found on various ON products, without explaining how such features are distinctive to ON specifically. The AC describes (i) "identically shaped…containers and lids" that have (ii) white lids with (iii) non-white containers featuring (iv) "large-bolded statements" of the product's characteristics (v) placed "at the top of the container" with (vi) the generic product name "in the middle of the container in a different color than the container and in a larger font" and (vii) information about the product's uses on the bottom of the container.  AC, ¶42.

There is nothing distinctive about the "Trade Dress" so described. The container shape and spatial placement of text identified in the AC "represents the type of design choice that is almost invariably intended to render the product itself more useful or more appealing' rather than to identify the [product's] *source*." *Int'l. Leisure Prods. v. Funboy LLC*, 747 F.Appx. 23, 26 (2d Cir. 2018) (emphasis in original). Descriptions on the container's face, the use of different colors to render the design legible, the routine shape of the container are examples of appealing, practical design, not an attempt to "source identify."

Indeed, what the AC describes is so commonplace that it alleges no design at all. The AC does not describe anything unique about ON's designs that make them recognizable as ON products. Such failure to precisely articulate how their products are *distinctive to them* defeats Plaintiffs' claims.[3] They are unable to identify any specific pattern or color scheme associated with

---

[3] The AC's failure to articulate distinctiveness cannot be cured by the images in the AC (¶42), since pictures cannot "make up for the deficiency in the precise expression of the distinctive features of the trade dress." *Eliya, Inc. v. Steven Madden, Ltd.*, 749 F.Appx.43, 47 (2d Cir. 2018); *see also APP Grp.*, 2024 U.S. App. LEXIS 554 at *2 (the "inclusion of photographs does not salvage the insufficient description because pictures are not a substitute for a precise description"). In any event, those images only identify distinctive marks found on the *Pure Ease products*, which have their own distinctive white "swoosh" design at the top of their containers that is absent from any of the ON products. AC, ¶57. They also have graphics on them found nowhere on the ON products, and are written in different fonts.

the ON brand, and resort to alleging that the use of a white container lid *with any other color on the container itself* is their distinctive "Trade Dress." AC, ¶42. According to Plaintiffs, such a white/non-white color combination on *any* container of routine size and shape belongs to them. Plaintiffs further claim that text in a different color than a container's (or placing the product name and its description on its center) is somehow distinctive to the ON brand. That Pure Ease products feature non-white containers with bold lettering prominently featured on them (in different colors than the containers') can be of no moment since thousands of other products necessarily must do so as well. None of these characteristics can possibly be characterized as unique features that would make any customer think of ON and its distinctive packaging, look or feel. Indeed, a simple online image search confirms that the design ON claims as its own is used by major brands across the country. *See* Declaration of Noam Besdin in Support of Roth's Motion to Dismiss, filed concurrently herewith ("Besdin Decl."), at ¶6, Exhibit C.

To protect such a mishmash of elements together as legally "distinct" defeats the very purpose of trade dress protection by stifling competitive advertising and preventing courts from "shap[ing] narrowly-tailored relief [since] they do not know what distinctive combination of ingredients deserves protection." *Landscape Forms,* 113 F.3d at 381.

### B. *Plaintiffs Fail to Adequately Plead Secondary Meaning*

To state a claim, "[a] complaint must include sufficient facts to support an inference of secondary meaning," and in non-conclusory terms. *Sara Designs,* 234 F.Supp.3d at 555. It must adequately allege that "in the minds of the public, the primary significance of a product feature . . . is to identify the source of the product rather than the product itself." *Carson*, 11 F.Supp.3d at 342 (*citing Yurman Designs*, 262 F.3d at 116 (product acquires secondary meaning when "in the minds of the public, the primary significance of the [dress] is to identify the source of the product

rather than the product itself")). Courts look for well-pleaded allegations of "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) the length and exclusivity of the mark's use" in analyzing claims of secondary meaning. *Id.*, 343.

Plaintiffs do not allege anything about consumer studies, attempts to plagiarize its dress or unsolicited media coverage.[4] Instead, they assert, alongside conclusory statements containing no underlying facts (AC, ¶158), that ON achieved secondary meaning via its (i) exclusive use since 2022; (ii) expenditure of 1.8 million in advertising "its products;" and (iii) sale of one million products. AC, ¶46.

As for the alleged exclusive use since 2022, "courts often point to five years of exclusive use of a mark as evidence of secondary meaning." *Quality Serv. Grp. v. LJMR Corp.*, 831 F.Supp.2d 705, 709 (S.D.N.Y. 2011). Three years has expressly been found insufficient. *See*, *e.g.*, *Hello I Am Elliot, Inc. v. Sine*, 2020 U.S. Dist. LEXIS 116681, at *25 (S.D.N.Y. July 2, 2020) (*citing Bubble Genius LLC v. Smith*, 239 F.Supp.3d 586, 600 (E.D.N.Y. 2017) (dismissing trade dress claim where plaintiff used trade dress exclusively for three years and nine months)).

---

[4] Plaintiffs allege positive Amazon reviews "for [their] products and [] customer service." AC, ¶46. Even accepting that customer reviews constitute "media coverage," all Plaintiffs suggest is that they "ha[ve] satisfied customers," not that their trade dress "had taken root." *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F.Supp.3d 612, 659 (S.D.N.Y. 2016). Nowhere does the AC tie any reviews to product design. *See Hello I Am Elliot*, 2020 U.S. Dist. 116681, at *22 (*citing Carson*, 11 F.Supp.3d at 344) (dismissing claim alleging positive consumer reviews in lieu of unsolicited media coverage). Plaintiffs' allegedly popular customer service has nothing to do with its trade dress.

Here, Plaintiffs' own Amazon page and website tout a "new look" for the very products discussed in the AC, contradicting Plaintiffs' allegations. *See* Besdin Decl., ¶5, Exs. A, B.[5]



As for the $1.8 million allegedly spent on advertising, "[m]erely showing that a certain amount was spent on advertising provides little support for secondary meaning." *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of NJ*, 894 F.Supp.2d 288, 319 (S.D.N.Y. 2012). Dispositively, nowhere do Plaintiffs allege any specific promotion or advertising effort with any detail, let alone any advertising tied to the alleged trade dress itself. *See Bubble Genius*, 239 F.Supp.3d at 598 (claim failed to allege specifics of promotion efforts); *Urban Group Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, 2013 U.S. Dist. LEXIS 33270, at *3 (S.D.N.Y.

---

[5] "[F]or purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination' judicial notice should be taken." *Hesse v. Godiva Chocolatier, Inc.*, 463 F.Supp.3d 453, 463 (S.D.N.Y. 2020) (*citing Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F.Supp.3d 156 (S.D.N.Y. 2015)); *see also Fernandez v. Zoni Language Ctr., Inc.*, 2016 U.S. Dist. LEXIS 65310 at *3 (S.D.N.Y May 18, 2016) ("Courts may [] take judicial notice of information contained on websites where authenticity [] has not been questioned.").

March 8, 2013) (claim failed to allege any advertising that stressed the alleged trade dress).  The AC does not tie its alleged $1.8 million expenditure to any specific products at all, let alone the alleged trade dress designs, referring to "its products" generally. *Carson Opt.,* 11 F.Supp.3d at 344 (dismissing claim where complaint was silent as to whether advertising itself stressed the alleged trade dress).

Similarly, the AC's allegation of one million product sales does not include any facts to support the trade dress' association with those sales. *Id.* (alleged sales of "over a million" products, insufficient when not linked to trade dress itself); *Dick's Sporting Goods, Inc.*, 2013 U.S. Dist. LEXIS 33270 at *4, n.3 ("Substantial sales of a product, if [] unaccompanied by a concomitant effort on the seller's part to associate [] trade dress with the source of the product rather than the product itself, do not establish that [] trade dress has acquired secondary meaning.")

## C.  *The Alleged Design is Functional*

Only non-functional trade dress is eligible for protection, and Plaintiffs carry a statutory burden of properly alleging as much. *Eliya*, 749 F.Appx. at 47 ("We are constrained by a statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection."). The AC therefore must identify "evidence of non-functionality." *APP Grp.*, 2024 U.S. App. LEXIS 554, at *6. Traditional, utilitarian functionality turns on whether a product's feature is either essential to its use or is otherwise driven by quality or cost concerns, while a product is aesthetically functional if "protection would significantly hinder competition by limiting the range of adequate alternative designs." *Deckers Outdoor Corp. v. It's Friday, Inc.*, 2024 U.S. Dist. LEXIS 198494, at *14-15 (S.D.N.Y. Oct. 31, 2024) (citation omitted).

Here, the AC contains conclusory formulaic statements alleging non-functionality. AC, ¶¶43, 156. Such allegations are insufficient in the first instance, because "a conclusory assertion

11

that the [design] is 'unique and nonfunctional' [without] factual allegations demonstrating that the design is not aesthetically or otherwise functional" will be dismissed. *DO Denim, LLC v. Fried Denim, Inc.*, 634 F.Supp.2d 403, 408 (S.D.N.Y. 2009).

The AC does not allege facts indicating traditional or aesthetic non-functionality. The elements described as "Trade Dress" serve traditionally functional purposes, such as communicating the contents of the container, holding the product in a convenient fashion that preserves quality, and describing the proper usage and contents of the products themselves. None of these elements serve to identify the source of the product. The alleged trade dress is otherwise aesthetically functional, insomuch as all containers must have prominent lettering identifying their contents, and all must more than one single color as to be legible. If the elements described here concerning color, shape and font were determined to belong to ON, it would surely hinder competition to a significant degree by limiting the range of available designs in the marketplace— the epitome of unprotectable functional design.

### D. The Complaint Does Not Adequately Allege Likelihood of Confusion

The AC repeatedly claims in wholly conclusory terms that the Pure Ease products are "likely to cause consumer confusion" or have already "caused actual confusion." AC, ¶¶64, 65, 69, 155, 159. These fact-free allegations are "legal conclusions and not [] factual assertions." *Vedder Software*, 2013 U.S. Dist. LEXIS 202852 at *30 (N.D.N.Y. Mar. 22, 2013); *see also Eliya*, 749F.Appx. at 47 (rejecting conclusory allegations of confusion that do not outline specific resemblances causing confusion).

The only factual assertion offered by Plaintiffs is their allegation of actual confusion by "consumers…who are seeking to register those products with [ON]," which ON is aware of "based on calls it received from consumers." AC, ¶¶161-162. This alleged confusion about "registration"

is not tied to any resemblance between ON's and Pure Ease's products, and the content of the calls are not disclosed, leaving the Court to guess what was found confusing.

Regardless, this allegation does not come close to addressing the traditional *Polaroid* factors that courts look to when analyzing claims of likely confusion. *See Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009). As discussed, the "trade dress" is not strong or similar to any specific designs of Pure Ease (Plaintiffs cannot even articulate how it is distinctive at all). The AC contains no evidence of actual confusion or bad faith imitation and does not address product quality of consumer sophistication. Bare pleadings here are not enough; courts look for inference of a "probability of confusion, not a mere possibility." *Carson Opt.,* 11 F.Supp.3d at 345.

### E.  *The NY-Gen. Bus. L. 360-L Claim (Count X) Also Fails*

Count X repleads the same trade dress allegations and seeks an injunction pursuant to NYGBL § 360-L. AC, ¶¶243-247. That statute "protects distinctive marks from dilution" and requires a showing of (1) a strong mark with a distinctive quality or that has acquired secondary meaning, and (2) "a likelihood of dilution by either blurring or tarnishment." *Capri Sun GmbH v. Am. Bev. Corp.*, 595 F.Supp.3d 83, 185 (S.D.N.Y. 2022).

As outlined *supra*, Plaintiffs fail to identify any distinctive mark or plead secondary meaning, thereby "fall[ing] at the first hurdle." *RVC Floor Decor, Ltd. v. Floor & Decor Outlets of Am., Inc.*, 2024 U.S. Dist. LEXIS 100187, at *55-56 (E.D.N.Y. Jun. 5, 2024) (analyzing same factors for NYGBL claim as Lanham Act claim). But the AC anyway fails to articulate any form of a dilution claim, asserting nothing to infer the blurring or tarnishment of its design aside from one conclusory statement about the alleged quality of Pure Ease's products. AC, ¶247. Nowhere do Plaintiffs "demonstrate any differences in the quality or quality controls standards" of the

13

products at issue, preventing them from arguing that they are "of shoddier quality" for the purposes of either a blurring or tarnishment argument. *Krasnyi Oktyabr, Inc. v. Trilini Imports*, 578 F.Supp.2d 455, 471 (E.D.N.Y. 2008).

### III.    Counts III, IV and VI:  The Trade Secret Claims

Counts III and IV sound in misappropriation of trade secrets, which are adjudicated similarly under pleaded state and federal law. *See Inv. Science, LLC v. Oath Holdings Inc.*, 2021 U.S. Dist. LEXIS 151076, at *13 (S.D.N.Y. Aug. 11, 2021). Plaintiffs claim that they possess trade secrets consisting of (i) product formulas, (ii) customer, vendor, supplier and provider lists, and (iii) their business, marketing and pricing strategies. AC, ¶76. Roth and Stern allegedly had access to these categories of information as employees, and allegedly disclosed them to Serenu. *Id.*, ¶84.

As for how these categories of information were allegedly misappropriated, the AC asserts five factual allegations: (i) Stern is alleged to have "worked to substantially duplicate" Plaintiffs' product formulas (¶97), (ii) Roth is alleged to have paid Plaintiffs' unidentified employees for "trade secrets and confidential information" that is nowhere identified or described (¶119); (iii) Roth is alleged to have downloaded "proprietary data" from a stolen laptop (¶106); (iv) Roth is alleged to have emailed a list of Plaintiffs' customers with their contact information (¶124); and (v) both are alleged to have "asked Plaintiffs' employees to collect and test product samples" and to provide them with "a sensitive formula" related to product listings (¶152).

#### A.  No Trade Secrets Are Alleged With Requisite Specificity

"A party alleging that it owns a trade secret must plead specific allegations as to the information owned and its value." *Altman Stage Light., Inc. v. Smith*, 2022 U.S. Dist. LEXIS 22699, at *11-12 (S.D.N.Y. Feb. 8, 2022) (*citing Elsevier Inc. v. Doctor Evidence, LLC*, 2018 U.S. Dist. LEXIS 10730, at *4 (S.D.N.Y. Jan. 23, 2018)) ("a party [] must put specific information as to the information owned and its value"). The AC thus must "give [Defendants] fair notice of the

claim by including, in at least some identifying detail, the trade secret it is alleged to have misappropriated." *Id.* "A complaint that only claims general categories of information and data as trade secrets does not state a claim." *Zurich Am. Life Ins. Co. v. Nagel*, 538 F.Supp.3d 396, 404 (S.D.N.Y. 2021).

The AC's references to "product formulas" and "lists" and "strategies" do not suffice without more detail as to what makes them competitive secrets. *Zurich*, 538 F.Supp.3d at 404 (rejecting allegations of misappropriated "documents" and "sensitive personal information" and "financial reports" as perhaps confidential but not "trade secret"). Nowhere do Plaintiffs identify factors that "define the contours of a trade secret" like its value, the extent it has been kept secret within the company, or the ease with which it could be acquired by outsiders. *Elsevier*, 2018 U.S. Dist. LEXIS 10730 at *17. Nowhere are any specific products' "formulas" identified, nor are any specific strategies of any kind. Such "general descriptions" of *categories of information* as opposed to specifically identified secretive information, pleaded in the "broadest terms," do not suffice. *Is. Intellectual Prop., LLC v. Stonecastle Asset Mgt. LLC*, 463 F.Supp.3d 490, 500 (S.D.N.Y. 2020).

The AC's recitation of the elements and broadly conclusory description of confidential information do not state a claim. AC, ¶¶76-86, 175-178, 182-188. "Conclusory statements that simply *restate the elements of a trade secret*" are plainly insufficient. *Broidy v. Global Risk Advisors LLC*, 2023 U.S. Dist. LEXIS 171621, at *29 (S.D.N.Y. Sept. 26, 2023) (emphasis in original) (*citing Democratic Nat'l Comm. v. Russian Fed'n*, 392 F.Supp.3d 410, 448 (S.D.N.Y. 2019); *see also Elsevier*, 2018 U.S. Dist. LEXIS 10730 at *16 (holding same). Indeed, much of Plaintiffs' allegations do no more than "restate the elements" only.

Of the five allegations alleged with any factual specificity, three plainly fail to describe anything beyond broad categories of plausibly confidential information. Stern is alleged to have

"worked to substantially duplicate" certain "product formulas" that are nowhere described in even the slightest detail. AC, ¶97. Roth, meanwhile, is alleged to have tried to pay "for trade secrets and confidential information," and to have downloaded "proprietary information" from a computer. *Id.* at ¶¶106, 119. Again, no detail is provided whatsoever.

## B. Lists with Contact Information Are Not, As Pleaded, Trade Secrets

The "trade secrets" Plaintiffs allege to have been misappropriated include lists of customers, vendors and suppliers. *Id.* at ¶84. No further information is provided concerning what makes these lists proprietary, let alone trade secrets. Indeed, as Plaintiffs themselves explain, their business derives from product sales "through various e-commerce channels [such as] Amazon, eBay and Walmart.com." *Id.* at ¶18. Nowhere do Plaintiffs explain the value of its list of customers given a business model that turns on sales via mass distribution channels like Amazon or even retail chain stores. Plaintiffs simply declare their "lists" to be "trade secret" without elaboration.

"Because Plaintiff has not 'identified anything about the process of developing [customer] lists' or 'shown how their particular value derives from their secrecy,' it fails to state a claim." *Beijing Neu Cloud Oriental Sys. Tech. Co. v. IBM*, 2022 U.S. Dist. LEXIS 54348, at *11 (S.D.N.Y. Mar. 25, 2022); *see also Democratic Natl. Comm.*, 392.F.Supp.3d at 448 (rejecting "donor lists" and "fundraising strategies" as conclusory descriptions, and finding plaintiff had "not identified anything about the process of developing [] lists or [] strategies or shown how their particular value derives from their secrecy.").

The AC makes no factual allegations regarding whether lists of their customers or vendors are "discoverable only by extraordinary efforts [and their] patronage had been secured by years of effort and advertising effected by the expenditure of substantial time and money." *Converged Compliance Solutions, Inc. v. Xop Networks, Inc.*, 2024 U.S. Dist. LEXIS 173883, at *24-25

16

(S.D.N.Y. Sept. 25, 2024) *(citing Catalyst Advisors, L.P. v. Catalyst Advisors Invs. Glob. Inc.*, 602 F.Supp.3d 663, 674 (S.D.N.Y. 2022)); *see also Regency NYC, Inc. v. Atkinson*, 2024 U.S. Dist. LEXIS 180601, *25-26 (S.D.N.Y. Sept. 27, 2024) ("it is incumbent upon plaintiff to demonstrate that its customers are not known in the trade and are discoverable only by extraordinary efforts"). In fact, the *only* description of any "list" owned by Plaintiffs concedes that it contained nothing more than customer names and contact information. AC, ¶124. There is no suggestion that this list contained buying patterns or purchasing preferences or anything that requires extraordinary work to obtain. *See 24 Seven, LLC v. Martinez,* 2021 U.S. Dist. LEXIS 15480, at *20 (S.D.N.Y. Jan. 26, 2021) (lists of candidates and customers, without more, cannot be proprietary to the level of trade secret).[6]

### C. To the Extent No Misappropriation Is Alleged, There Can Be No Claim

Of course, even if Plaintiffs had identified "trade secrets" with specificity, they would still need to allege that such information was actually misappropriated. "Courts recognize three theories of [trade secret] liability: (1) acquisition, (2) disclosure, or (3) use." *Converged Compliance,* 2024 U.S. Dist. LEXIS 173883 at *28 (dismissing claim for failure to allege any misappropriation).

Plaintiffs' factual allegations concede the absence of any actual acquisition, disclosure or use of Plaintiffs' purported trade secrets. For example, the AC alleges that Roth or Stern "asked Plaintiffs' employees to collect and test product samples" and to provide them with "a sensitive

---

[6] The AC does not contain any factual allegations concerning the misappropriation of Plaintiffs' "strategies," although it references such allegedly secret strategies numerous times. Regardless, in most circumstances, "marketing strategies or mere knowledge of the intricacies of a business do not rise to the level of a trade secret." *Garvey v. Face of Beauty, LLC*, 2022 U.S. Dist. LEXIS 171182, at *22-23 (S.D.N.Y. Sept. 21, 2022). Moreover, pricing information is only a trade secret when it was generated by "some type of proprietary formula that gives it a unique advantage, such as complex pricing or trading algorithm." *24 Seven*, 2021 U.S. Dist. LEXIS 15480 at *22 (noting that pricing data relating to materials or costs or public prices cannot be trade secret). No such allegations appear in the AC.

formula." AC, ¶152.  Not only do Plaintiffs fail to provide any detail surrounding these product samples or formula, they conspicuously fail to allege that any such product samples were actually collected or tested, or that any sensitive formula was actually provided to any Defendant. Similarly, there can be no "misappropriation" arising out of *efforts* allegedly made by Stern to "duplicate" product formulas since the AC does not allege that such efforts were successful. AC, ¶97.  Allegations of *attempted* misappropriation are insufficient.

### D. The AC Does Not Sufficiently Allege the Value of the Alleged Trade Secrets

Plaintiffs must also allege how and why its purported trade secrets give them "an economic leg up over competitors who do not know or use it." *Inv. Science*, 2021 U.S. Dist. LEXIS 151076 at *11 (rejecting "bare recitals" and "formulaic recitations" of legal elements concerning economic value of alleged trade secret); *see also 24 Seven, LLC*, 2021 U.S. Dist. LEXIS 15480 at *9 (rejecting claim that did not allege how or why a trade secret gave plaintiff economic competitive edge).  Absent "proffered facts" concerning how this specific information allegedly gave Plaintiffs a "competitive advantage," no trade secret has been properly alleged. *Universal Processing LLC v. Zhuang*, 2018 U.S. Dist. LEXIS 168730, at *9-10 (S.D.N.Y. Sept. 28, 2018).

No such facts are proffered in the AC except in the most conclusory and general terms. AC, ¶¶78, 190.  There are no factual allegations concerning the competitive advantage Plaintiffs enjoy due to any formula, strategy or list they claim to have been misappropriated.

### E. The AC Inadequately Pleads Plaintiffs' Protection of its Property

Plaintiffs purport to have taken "reasonable steps to maintain the secrecy of [their] trade secrets," describing non-disclosure agreements, cybersecurity and technological "features" including "password-protected networks" and physical office locks. *Id.* at ¶79.  "Taking steps to

protect information through a confidentiality agreement alone does not suggest the existence of a trade secret." *Universal Processing*, 2018 U.S. Dist. LEXIS 168730, at *9.

Here, no such agreements are identified; the terms of Roth's alleged "employment agreement" are described only as mirroring the Stern Contract, which, as pleaded, does not address proprietary company information at all. *See Mason v. Amtrust Fin. Servs., Inc.*, 848 F.Appx.447, 450 (2d Cir. 2021) (plaintiff's failure to "stipulate[e] in his employment contract that the [software] was his proprietary information" evidenced that he "had not taken reasonable measures to protect his information.").

As for the passwords and technological features, the AC "fails to differentiate from a protective measure that is used to safeguard any other corporate information," and in fact describes (AC, ¶79) a password-protected network for all of Plaintiffs' employees. *Inv. Science,* 2021 US Dist. LEXIS 151076, at *10. Such company-wide protective measures, deployed by most businesses across the country in the ordinary course, "fall short" of the kind of targeted protection required in this context. *Id*.

F.  *The Unjust Enrichment Claim (Count VI) Is Duplicative of Counts III and IV*

Plaintiffs' unjust enrichment claim regurgitates its trade secret allegations, alleging misappropriation of information without permission or justification. AC, ¶¶209-210. No facts are otherwise pleaded outside of these allegations, which mimic what was alleged in Counts III and IV. Because any alleged improper use or acquisition of confidential information is "at the core of Plaintiffs' trade secret" claim, this claim is either impermissibly duplicative or similarly defective because such a claim "cannot remedy the defects" of a trade secret claim. *Tilebar v. Tiles*, 723 F.Supp.3d 164, 208 (E.D.N.Y. 2024).  The AC proffers no theory that could explain how its

allegations in Count VI are in any way distinct from what it alleged in Counts III and IV.  *See Bytemark, Inc. v. Xerox Corp.*, 342 F.Supp.3d 496, 512-513 (S.D.N.Y. 2018).

### G.  The Complaint States No Basis for Roth's or Stern's Individual Liability

Even assuming Plaintiffs had stated trade secret claims (or trade dress claims, discussed *supra*), nowhere do they provide any basis whatsoever for personal liability on the part of his former employees Roth or Stern, whose names are not even mentioned in the context of these allegations. To properly allege that either Roth or Stern are liable for Serenu's alleged infringement, the AC must include allegations sufficient to infer that they were a "moving, active conscious force" behind it. *Atari Interactive, Inc. v. Printify, Inc.*, 714 F.Supp.3d 225, 237 (S.D.N.Y. 2024) (*citing Coty Inc. v. Cosmopolitan Cosms. Inc.*, 432 F.Supp.3d 345, 353 (S.D.N.Y. 2020)).

No specific actions of Roth or Stern are identified that could demonstrate active involvement, or even direct authorizations of Serenu's alleged infringement, beyond their general corporate affiliation with Serenu.  There is no basis for any of the trade dress or trade secret claims to be asserted against them personally merely by virtue of their alleged affiliation with Serenu.

### IV.   Count IX: Unfair Competition

To state a claim for unfair competition under New York law, "a plaintiff must allege that a defendant misappropriated plaintiff's labor, skills, expenditures or good will, and displayed some element of bad faith in doing so." *Tilebar*, 723 F.Supp.3d at 199.  Plaintiffs allege precisely that but nothing more, quoting those legal elements almost verbatim before repeating their allegations of conversion, tortious interference, trade secret misappropriation and trade dress infringement. AC, ¶¶230-234.

It is well-established that "[a] claim for unfair competition based on the same allegations as a claim for misappropriation of trade secrets is treated as a single cause of action,' and should

be dismissed as duplicative." *Tilebar*, 723 F.Supp.3d at 199 (citations omitted).  The same is true for unfair competition claims based on conduct alleged to be barred by contract, or other tort claims.  *See*, *e.g.*, *Bytemark*, 342 F.Supp.3d at 508 (duplicative of contract claim); *Rocket Pharms., Inc. v. Lexeo Therapeutics, Inc.*, 2024 U.S. Dist. LEXIS 145771, at *29 (S.D.N.Y Aug. 14, 2024) (duplicative of tortious interference claim without any facts separate from those forming the basis of other claims).  As the unfair competition claim here just repeats the same allegations as Plaintiffs' other claims, without alleging any facts of its own, it should be dismissed as duplicative.

In any event, "the essence of unfair competition under New York common law is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods." *Uni-World Capital L.P. v. Preferred Fragrance, Inc.*, 43 F.Supp.3d 236, 250 (S.D.N.Y. 2014).  For the reasons outlined *supra*, Plaintiffs fail to allege any likelihood of confusion as the origin of their products.  *Id.*

Moreover, the "absence of sufficient allegation of special damages mandates the dismissal of [an] unfair competition cause[] of action." *eCommission Sols, Inc. v. CTS Holdings Inc.*, 860 F.Appx. 758, 760 (2d Cir. 2019) (*citation omitted*).  Such a claim must therefore allege losses resulting from "direct financial loss, lost dealings, or an accounting of the profits caused by the anticompetitive acts at issue." *SA Luxury Expeditions, LLC v. Schleien*, 2022 U.S. Dist. LEXIS 155127, at *11 (S.D.N.Y. Aug. 29, 2022).  These damages "must be fully and accurately stated, with sufficient particularity to identify actual losses." *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F.Supp.3d 263, 292 (S.D.N.Y. 2016).  "[G]eneral allegations of lost sales from unidentified customers are insufficient" and even "[r]ound figures or a general allegation of a dollar amount . . . will not suffice." *Dentsply Int'l Inc. v. Dental Brands for Less, LLC*, 2016 U.S.

Dist. LEXIS 149139, at *6 (S.D.N.Y. Oct. 27, 2016). Here, Plaintiffs have sought injunctive relief and an amount to be determined trial, defeating the unfair competition claim. AC, ¶241.

## V.    The Breach of Contract Claim (Count XIII) Fails to State A Claim

No contract claim is stated against Roth. The AC alleges that *Stern* breached an agreement he signed at some point in 2016 with Nektar, a "predecessor entity" of LF. *Id.*, ¶¶21-22. That alleged Stern Contract includes non-compete provisions that last for five years after the expiration of his employment with Nektar, though that date is not provided. In fact, no further information is provided about the Stern Contract, but Roth is nevertheless alleged to have entered into an agreement "on the same terms as the Stern Contract." *Id.*, ¶28.[7] The AC says nothing more about those terms, and does not even identify who, other than Roth, is alleged to have signed this alleged agreement or when. Nor does the AC identify who Roth is alleged to have worked for, claiming he began working for all the Plaintiffs in 2020. *Id.*, ¶27. It is unclear what Roth's role is alleged to have been with respect to ON, the only entity whose products are described in any detail. Regardless, ON does not even assert a contract claim against Roth, only Nektar and LF do. *Id.*, ¶274.

These vague allegations are insufficient to state claims for breach of contract. Contract claims must, first and foremost, properly plead the existence of an enforceable agreement, which requires a plaintiff "to plead facts surrounding the formation of the contract such as the date the parties entered into the contract, the major terms of the contract [and] the parties to the contract..." *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F.Supp.2d 405, 412-413 (S.D.N.Y. 2009). Absent this information, such a claim lacks requisite detail. *See, Shake Shack Enters., LLC v. Brand*

---

[7] The Original Complaint conspicuously neglected to mention any "written employment contract" that Roth ever signed, alleging instead that Roth had an "implicit" agreement with Plaintiffs in his role as their employee. Original Complaint, ¶47.

*Design Co.*, 708 F.Supp.3d 515, 523 (S.D.N.Y. 2023) (dismissing contract claim without sufficient detail as to formation) (*citing Ebomwonyi v. Sea Shipping Line*, 473 F.Supp.3d 338, 348 (S.D.N.Y. 2020) (dismissing claim because complaint did not identify parties to contract or how or when it was formed)); *Silverman v. 3d Total Solutions, Inc.*, 2019 U.S. Dist. LEXIS 153048 at *17 (S.D.N.Y. Sept. 9, 2019) (complaint "fails to allege any facts surrounding the formation of the contract").

Here, no facts are alleged "relating to the formation of the contract, the date it took place, [or] the parties to the contract," all of which is information to which Roth is entitled. *Berman v. Sugo LLC*, 580 F.Supp.2d 191, 202 (S.D.N.Y. 2008).

## CONCLUSION

For all of these reasons, as well as the reasons stated in the brief filed by Roth's co-defendants Stern and Serenu concurrently herewith, the AC should be dismissed with prejudice and without leave to further amend.


Dated:    New York, New York
          March 3, 2025                          **STEIN ADLER**
                                                 **DABAH & ZELKOWITZ LLP**


                                                 By:   */s Noam Besdin*
                                                 _____
                                                       Adam Stein, Esq.
                                                       Noam Besdin, Esq.
                                                 936 Broadway, 5th Floor
                                                 New York, New York 10010
                                                 (212) 867-5620
                                                 astein@steinadlerlaw.com
                                                 nbesdin@steinadlerlaw.com

                                                 *Attorneys for Defendant Shmuel Mayer Roth*